UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTEBAN GONZALEZ, | * |
| Petitioner, | * |
| v. | * |
| | *   Civil Action No. 14-13279-MGM |
| J. GRONDOLSKY, WARDEN | * |
| Respondent. | * |

MEMORANDUM AND ORDER REGARDING
RESPONDENT'S MOTION FOR SUMMARY
JUDGMENT
(Dkt. No. 17)

January 20, 2016

MASTROIANNI, U.S.D.J.

I.  INTRODUCTION

Esteban Gonzalez ("Petitioner"), a federal prisoner formerly in custody at FMC Devens in Ayer, Massachusetts, filed a self-prepared petition for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner seeks a two-hundred and sixty-five-day reduction of his federal sentence for time spent "at liberty" after state officials erroneously released him instead of transferring him directly to federal custody to continue serving his concurrent federal sentence.

Jeffrey Grondolsky ("Respondent"), Warden of Federal Medical Center—Devens, filed a motion to dismiss. On July 15, 2015, however, the court converted Respondent's motion to dismiss into a motion for summary judgment because Respondent submitted materials which went outside the facts alleged in the petition. *See Gonzalez v. Grondolsky*, 2015 WL 4274183, at *2-3 (D. Mass. July 15, 2015). The court provided Petitioner with an opportunity to supplement the record, which he did. (Dkt. No. 28.) Respondent thereafter filed his own supplemental memorandum. (Dkt. No. 31.) During this process, the court discovered that Petitioner no longer was detained at FMC Devens.

(Dkt. Nos. 26, 27.) He is now housed in a federal prison camp in Yankton, South Dakota. (Dkt. No. 28.) In light of this new information, the court will dismiss the petition without prejudice to Petitioner refiling in the United States District Court for the District of South Dakota and naming the warden of the Yankton facility as the respondent.

## II.  BACKGROUND AND PROCEDURAL HISTORY[1]

On July 10, 2006, Petitioner was arrested in Kleberg County, Texas for violation of probation in Case No. 01-CFR-201. On July 20, 2006, he was temporarily transferred to federal custody to face federal charges. On December 20, 2007, Petitioner was sentenced for the federal charges in the United States District Court for the Southern District of Texas to a 160-month term of imprisonment in *United States v. Gonzalez*, No. 06-CR-00556-002. The sentencing court ordered the federal sentence to run concurrently with any state sentence imposed in Case No. 01-CRF-201. On March 6, 2008, Petitioner was returned to the custody of state officials. Thereafter, on May 29, 2008, Petitioner was sentenced in Kleberg County, Texas, in Case No. 01-CRF-201, to a five-year term of imprisonment to be served in the Texas Department of Criminal Justice. The US Marshals Service placed a detainer on Petitioner, dated July 17, 2008, and forwarded it to the Texas Department of Criminal Justice.

On July 25, 2008, while in the custody of the Texas Department of Criminal Justice, Petitioner was arrested by Nueces County, Texas officials, in connection with Case No. 06-1906-G. On October 29, 2008, Petitioner satisfied the sentence in Case No. 01-CFR-201 but remained in Nueces County custody due to Case. No. 06-1906-G. On November 13, 2008, Petitioner was sentenced in Case No. 06-1906-G to a twenty-year term of imprisonment with credit for time served. On February 2, 2009, Petitioner was returned to the custody of the Texas Department of

---

[1] The parties do not dispute the following facts, which are construed in a light most favorable to Petitioner.

Criminal Justice from Nueces County. On June 28, 2012, Petitioner was paroled from his state sentence in Case No. 06-1906-G and erroneously released; he should have been placed directly into federal custody. On March 21, 2013, federal officials arrested Petitioner for service of his federal sentence.

The Federal Bureau of Prisons ("BOP") has computed Petitioner's federal sentence as follows. Petitioner received credit for the time he spent in state custody from July 10, 2006, the date of his initial arrest by state officials, through December 19, 2007. His federal term commenced on December 20, 2007, the date it was imposed, in order to effectuate concurrent service as ordered by the sentencing court, until his release from state custody. However, the BOP has not credited Petitioner with the 265 days between his release from state custody on June 28, 2012 and his federal arrest on March 21, 2013, because he was not in custody during that time and, therefore, it is considered "inoperative time." Petitioner's projected release date, assuming he receives all Good Conduct Time available to him under 18 U.S.C. § 3634(b), is November 11, 2018.

On October 10, 2014, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 8.) After Respondent failed to respond, despite two service orders issued by the court on October 10, 2014 and January 9, 2015 directing him to do so,[2] the court issued Respondent a show-cause order on February 20, 2015. (Dkt. No. 14.) On March 6, 2015, Respondent's counsel filed a notice of appearance, a response to the court's show-cause order, and a motion to dismiss. (Dkt. Nos. 16-18.) As mentioned, the court converted Respondent's motion to dismiss into a motion for summary judgment on July 15, 2015, because Respondent submitted materials beyond the scope of the pleadings. *See Gonzalez v. Grondolsky*, 2015 WL 4274183,

---

[2] The court notes that the docket does not indicate the October 10, 2014 service order was actually mailed to Respondent, and Respondent has explained that the United States Attorney's Office has no record of receipt of that order. However, the docket does indicate that the January 9, 2015 service order was mailed to Respondent, and Respondent has conceded that the United States Attorney's Office received this order. (Dkt. Nos. 12, 18.)

at *2-3.[3] In light of this conversion, the court provided both parties an opportunity to supplement the record. *Id.* at *3. Subsequently, the court discovered that Plaintiff had been transferred from FMC Devens to a federal facility in South Dakota. (Dkt. Nos. 26, 27.) Thereafter, Petitioner confirmed his new address in "Yankton, South Dakota in a Federal Prison Camp." (Dkt. No. 28.)

III. ANALYSIS

In light of Petitioner's transfer outside of this district, the court deems it necessary to address the propriety of continuing this action in this forum against Respondent.

The federal habeas statute provides that the appropriate respondent to a habeas petition is "the person who has custody over" the petitioner. 28 U.S.C. § 2242. Similarly, under 28 U.S.C. § 2243, "the writ, or order to show cause shall be directed to the person having custody of the person detained." In addition, under 28 U.S.C. § 2241(a), district courts are limited to granting habeas relief "within their respective jurisdictions."

This statutory language, as well as the jurisprudence governing federal habeas petitions, forms the basis for two distinct, but often overlapping, rules addressed by the Supreme Court in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004): the immediate-custodian rule, and the territorial-jurisdiction rule. Under the first, "in habeas challenges to present physical confinement," which is the type of challenge Petitioner asserts here, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Id.* at 435.[4] As a procedural matter, identifying the proper respondent is critical because "[t]he writ of habeas corpus does not act upon the prisoner who seeks

---

[3] The court also denied Petitioner's motion for summary judgment, which was predicated solely on Respondent's failure to timely comply with the court's service orders. *See id.* at *2.

[4] In contrast, "a habeas petitioner who challenges a form of 'custody' other than present physical confinement"—for example, future confinement based on a detainer lodged in another state—"may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.* at 438 (discussing the exception recognized in *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973)). Here, Petitioner challenges the length of the federal sentence he is currently serving and, therefore, his challenge is to his "present physical confinement," also known as a "core" habeas challenge. *See id.* at 435.

4

relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95 (1973); *see also Vasquez v. Reno*, 233 F.3d 688, 690 (1st Cir. 2000). In what the Supreme Court has described as "the classic statement":

> The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner freed, but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent.

*Id.* at 495 (quoting *In the Matter of Jackson*, 15 Mich. 417, 439-40 (1867)); *see also Vasquez*, 233 F.3d at 691 ("The warden is the proper custodian because he has day-to-day control over the petitioner and is able to produce the latter before the habeas court.").

Under the territorial-jurisdiction rule, derived from the statutory language limiting district courts to granting habeas relief "within their respective jurisdictions," 28 U.S.C. § 2241(a), "the court issuing the writ [must] have jurisdiction over the custodian." *Padilla*, 542 U.S. at 442 (quoting *Braden*, 410 U.S. at 495). The Supreme Court has explained that "Congress added the limiting clause—'within their respective jurisdictions'—to the habeas statute in 1867 to avert the 'inconvenient [and] potentially embarrassing' possibility that 'every judge anywhere [could] issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 617 (1961)); *see also Braden*, 410 U.S. at 496 (discussing legislative history of the 1867 statute, and explaining that the territorial-jurisdiction clause was inserted in response to criticism that the original bill "would permit 'a district judge in Florida to bring before him some men convicted and sentenced and held under imprisonment in the State of Vermont or in any of the further States'" (quoting Cong. Globe, 39th Cong., 2d Sess., 730)). "Accordingly, with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Padilla*, 542 U.S. at 442 (quoting *Carbo*, 364 U.S. at 618).

The Supreme Court in *Braden* created an exception to the traditional "district of confinement" rule, holding that challenges to future confinement may be brought against prospective, or "legal," custodians residing within the court's jurisdiction despite the petitioner's absence from the district at the time. *Braden*, 410 U.S. at 495, 499-500. However, that exception and the holding that the territorial-jurisdiction clause "requires nothing more than that the court issuing the writ have jurisdiction over the custodian," *id.* at 495, did not upend, as a practical matter, the traditional "district of confinement" rule for "core" habeas challenges to present physical confinement. *Padilla*, 542 U.S. at 444. As the Supreme Court explained in *Padilla*:

> In habeas challenges to *present* physical confinement . . . the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent. This is because . . . the immediate custodian rule applies to core habeas challenges to present physical custody. By definition, the immediate custodian and the prisoner reside in the same district.

*Id.* Moreover, the Supreme Court in *Padilla* rejected the "long-arm approach to habeas jurisdiction," explaining that "*Braden* in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside their territorial jurisdiction." *Id.* at 445; *see also id.* at 444 (stating that *Braden* "did not indicate that a custodian may be served with process *outside* of the district court's territorial jurisdiction"). The Supreme Court therefore reaffirmed that "the custodian's absence from the territorial jurisdiction of the district court is fatal to habeas jurisdiction." *Id.* at 445 (citing *Schlanger v. Seamans*, 401 U.S. 487, 500 (1971)).

With all that said, there is a critical flaw with this action in its current form. As the only named respondent is the warden of FMC Devens, and as Petitioner has been transferred to another federal facility and is in the custody of a different warden, this action is now moot. *See Jones v. Cunningham*, 371 U.S. 236, 241 (1963) (explaining that "the dispute between the petitioner and the named respondent in each case had become moot because that particular respondent no longer held the petitioner in his custody" (citing *United States ex rel. Lynn v. Downer*, 322 U.S. 756 (1944), *United*

6

*States ex rel. Innes v. Crystal*, 319 U.S. 755 (1943), and *Weber v. Squier*, 315 U.S. 810 (1942))); *see also Ex Parte Endo*, 323 U.S. 283, 305 (1944) (describing the holding in *Crystal*, 319 U.S. 755, where the Supreme Court denied certiorari based on mootness because the petitioner was no longer in the respondent's custody); *Copley v. Keohane*, 150 F.3d 827, 830 (8th Cir. 1998). Here, as was true in *Crystal*, "[o]nly an order directed to the warden of the [new facility] could effectuate his discharge." *Ex Parte Endo*, 323 U.S. at 305 (citing *Crystal*, 319 U.S. 755); *see also Copley*, 150 F.3d at 830 ("But at this time Copley is not in the custody of anyone over whom we have jurisdiction, so there is no entity that we can order to effect Copley's release should the writ issue. The case thus is moot and we will not consider Copley's appeal.").

Granted, the Supreme Court in *Ex Parte Endo* created an exception to this mootness rule for cases in which the petitioner properly filed the habeas petition against the immediate custodian and thereafter was transferred outside the district court's territorial jurisdiction, but the exception only applies "where a person in whose custody [the petitioner] is remains within the district." *Ex Parte Endo*, 323 U.S. at 306; *see also Jones*, 371 U.S. at 243-44 ("[A] District Court did not lose its jurisdiction when a habeas petitioner was removed from the district *so long as an appropriate respondent with custody remained*." (emphasis added) (citing *Ex Parte Endo*, 323 U.S. at 304-307)); *Copley*, 150 F.3d at 830 ("It is true that, if a district court has proper jurisdiction when a habeas petition is filed, as is the case here, a subsequent transfer of the prisoner will not defeat habeas jurisdiction, but only 'so long as an appropriate respondent with custody remain[s]' in the district." (quoting *Jones*, 371 U.S. at 243-44)). In *Ex Parte Endo*, a case involving a Japanese-American citizen detained in California by the War Relocation Authority ("WRA"), the Supreme Court explained that there was "no suggestion that there is no one within the jurisdiction of the District Court who is responsible for the detention of appellant and who would be an appropriate respondent." *Ex Parte Endo*, 323 U.S. at 304. In fact, the Supreme Court noted that it was specifically "advised by the Acting Secretary of the Interior that

7

if the writ issues and is directed to the Secretary of the Interior or any official of the War Relocation Authority (*including an assistant director whose office is at San Francisco, which is in the jurisdiction of the District Court*), the corpus of appellant will be produced and the court's order complied with in all respects." *Id.* at 304-05 (emphasis added); *see Padilla*, 542 U.S. at 440 ("We held that, under these circumstances, the assistance director of the WRA, who resided in the Northern District [of California], would be an 'appropriate respondent' to whom the District Court could direct the writ."). It was on this basis that the Supreme Court held the case was "not moot." *Ex Parte Endo*, 323 U.S. at 305. Here, in contrast, there is no indication that any official with custody over, or legal authority to release, Petitioner remains in this district.

Moreover, while these two limits on habeas "jurisdiction" (the immediate-custodian and territorial-jurisdiction rules) are not jurisdictional "in the sense of subject-matter jurisdiction," *Padilla*, 542 U.S. at 434 n.7; *id.* at 451 (Kennedy, J., concurring), and thus likely can be waived in appropriate cases, the precise nature of these rules is not entirely clear. *Id.* at 453 (Kennedy, J., concurring) ("It is difficult to describe the precise nature of these restrictions on the filing of habeas petitions, as an examination of the Court's own opinions in this area makes clear."). Still, regardless of how these rules are characterized, the court must consider whether the named respondent has the *power* to provide the relief sought. *See Smith v. Idaho*, 392 F.3d 350, 355 n.3 (9th Cir. 2004) ("[W]hen a habeas petitioner has failed to name the proper respondent pursuant to § 2242, we must ask *sua sponte* whether the respondent who *is* named has the power to order the petitioner's release. If not, the court may not grant effective relief, and thus should not hear the case unless the petition is amended to name a respondent who can grant the desired relief."); *see also Padilla*, 542 U.S. at 441 (distinguishing between a court's initial acquisition of jurisdiction over a petition and its ability to grant habeas relief). As explained, Respondent does not presently have that power.

The court also does not believe it is appropriate to *sua sponte* substitute Petitioner's new warden as the respondent, in light of the territorial-jurisdiction limitation. *Cf. Ex Parte Endo*, 323 U.S. at 306 ("We only hold that the District Court acquired jurisdiction in this case and that the removal of Mitsuye Endo did not cause it to lose jurisdiction *where a person in whose custody she is remains within the district*." (emphasis added)). There is a significant difference, in the court's view, between a respondent's waiver of this limitation and a court's decision to substitute as a respondent a custodian located outside its territorial jurisdiction on its own accord.[5]

The court's decision that this action should not proceed here is also in the interest of justice. *See Padilla*, 542 U.S. at 453 (Kennedy, J., concurring) (explaining that even "[w]hen an exception applies . . . courts must still take into account the considerations that in the ordinary case are served by" these habeas jurisdiction limitations). Petitioner is now located far from this court. And the court is not prepared to say, based on the submissions, that an evidentiary hearing is unnecessary. Thus, if this case were to proceed here, there is a real possibility that Petitioner would need to be transported from South Dakota to Massachusetts. *See Braden*, 410 U.S. at 493-94, 500 (discussing "traditional venue considerations," including the location of witnesses and convenience of the parties). The court also notes that if this action were to proceed here, it would likely be required to apply the comparatively stringent First Circuit standard for invoking the common law "time at liberty doctrine." *See Espinoza v. Sabol*, 558 F.3d 83, 88-90 (1st Cir. 2009). Under these circumstances, when the delay in adjudicating this case is in some respects attributable to the Government's non-responsiveness, the court does not believe it is appropriate for the Government to benefit from the legal standards of the jurisdiction of Petitioner's prior custodian.

---

[5] Arguably, there has been no waiver here, as Petitioner was transferred *after* Respondent filed the motion to dismiss. Moreover, the court does not believe one respondent may waive this territorial-jurisdiction limitation for a non-party. This is not a case, for example, in which an appropriate respondent failed to raise this limitation in a case filed outside the district where the respondent is located, perhaps concluding it would be more convenient to let the case go forward in the chosen forum. Nor is this a case, as was true in *Ex Parte Endo*, where another potential respondent with power to effectuate the writ *is* located in this district.

The court recognizes that many courts have interpreted *Ex Parte Endo* much more broadly than this court, holding that despite a petitioner's transfer, the original court should retain jurisdiction and decide the case, apparently regardless of whether an appropriate respondent remains in the district. *See, e.g., Wheeler v. Rivera*, 2015 WL 7731473, at *2 n.2 (E.D. Ark. April 23, 2015) (collecting cases). However, neither the First Circuit nor any district courts within this circuit, as far as this court is aware, have adopted such a broad reading of *Ex Parte Endo*.[6] In contrast, two district courts have reached the opposite conclusion, consistent with this court's reading of the case law. *See Aitcheson v. Holder*, Civil Action No. 15-11123-NGM, Dkt. No. 35 (D. Mass. Dec. 31, 2015); *Johnson v. Immigration and Customs Enforcement*, 960 F. Supp. 2d 347, 349 (D.P.R. 2013). While this court can imagine a situation in which it may be appropriate to retain jurisdiction after a petitioner is transferred, this is not such a case. There is no indication that the transfer was an attempt by the Government to manipulate the litigation. *See Padilla*, 542 U.S. at 441; *Vasquez*, 233 F.3d at 696. In addition, as intimated, this is not a case in which the merits overwhelmingly favor the Government, *i.e.*, a "sure loser," such that it would be a waste of time to adjudicate the action in another forum. *Cf. Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999).

In the interest of efficiency, the court would be inclined to transfer this action to the District of South Dakota, rather than dismiss it without prejudice. However, the court lacks the authority to do so under the transfer statutes, all of which limit transfer to a district where the action could have been brought when it was initially commenced. 28 U.S.C. §§ 1404(a), 1406(a), 1631; *see Hoffman v. Blaski*, 363 U.S. 335, 342-44 (1960). When Petitioner filed the petition, of course, he could have only brought the action in this district, as his immediate custodian was located here; South Dakota was not an option. Nevertheless, dismissal without prejudice so Petitioner can refile in South

---

[6] Such a broad reading of *Ex Parte Endo* also ignores the Supreme Court's caveat, mentioned three separate times, that an appropriate respondent remained within the Northern District of California and, thus, was within reach of the district court's process. *Ex Parte Endo*, 323 U.S. at 306-07.

Dakota against an appropriate respondent should not significantly prejudice him. "There is no statute of limitations for federal prisoners filing habeas petitions pursuant to 28 U.S.C. § 2241." *Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012); *Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007); *see also Day McDonough*, 547 U.S. 198, 202 n.1 (2006). Moreover, there is still time to adjudicate the merits of Petitioner's claim before his allegedly appropriate release date.

IV.    CONCLUSION

For these reasons, the court DISMISSES Petitioner's petition for writ of habeas corpus WITHOUT PREJUDICE to Petitioner refiling in the United States District Court for the District of South Dakota against an appropriate respondent.

It is So Ordered.

                                              /s/ Mark G. Mastroianni
                                              MARK G. MASTROIANNI
                                              United States District Judge